UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**MARLENA HEMENWAY,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:19-cv-00268-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff Marlena Hemenway filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on January 3, 2019, denied Ms. Hemenway's applications for social security disability benefits and supplemental security income. Ms. Hemenway has now moved for judgment on the pleadings (Doc. 11) and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** Defendant's motion, and direct the Clerk to enter judgment in favor of the Defendant Commissioner.

### I.  BACKGROUND

    Plaintiff's applications were protectively filed on May 14 and May 15, 2015. She alleged that she became disabled on December 2, 2014, due to multiple physical disorders. She was 37 years old at the time her applications were filed.

    After initial administrative denials of her claim, Plaintiff appeared and testified at an administrative hearing held on December 4, 2017. A vocational expert, Lanell Hall, also testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on January 26, 2018. She first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and that she had not worked since her alleged onset date. Next, the ALJ concluded that Plaintiff suffered from severe impairments including thoracic scoliosis, depressive disorder, anxiety disorder, and headaches. The ALJ found that none of these impairments met the criteria for disability under various sections of the Listing of Impairments. Next, the ALJ determined that these impairments limited Plaintiff to the performance of a reduced range of light work. She could occasionally balance, stoop, kneel, crouch, crawl, climb ramps, and climb stairs, and could never climb ladders, ropes, or scaffolds. Additionally, she could not work in an

environment with more than moderate noise and had to avoid working in areas with bright or flickering lights as well as areas involving unprotected heights or dangerous machinery. Finally, she was limited to simple, routine tasks, simple work-related decisions, and minimal changes in work routines.

The ALJ determined that with these restrictions, Plaintiff could perform her past relevant work as a meat cutter/slicer. Ms. Hall, the vocational expert, also identified other unskilled jobs which someone with the Plaintiff's residual functional capacity could do, including housekeeper/cleaner, mail clerk, and stock clerk. Based on this evidence, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts a single claim of error. She argues that the ALJ did not have a substantial basis for giving only little weight to portions of the opinion of Danielle Ross, her treating nurse practitioner, which would be work-preclusive.

## II.  THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.

Plaintiff testified that she had a high school diploma and also graduated from cosmetology school. She last worked in December, 2014, but drew short-term disability for a period of time after that. She stopped working due to back pain. Sitting, walking, bending, twisting, or lying down too long exacerbated her pain, and a heating pad and pain medication made it better. Trigger point injections also provided her some relief on her left side.

Plaintiff lived in a house with three children, but had all five of her children at home when she stopped working. She drove herself to the hearing and was also able to drive to doctors' appointments. She could care for her personal needs and did some household chores, but had significant help from her children. She rarely shopped but was able to attend church every Sunday. Plaintiff said she had social anxiety which caused panic attacks, but she visited with her mother on a daily basis and took her children to school. She had seasonal depression as well.

When asked if her medication caused side effects, Plaintiff said they made her drowsy and dizzy. She could not lift more than ten pounds, could stand in one spot for only ten minutes, could sit for ten or fifteen minutes, and could walk very little. She provided some care for her pets. Her pain affected her memory and concentration.

The vocational expert, Ms. Hall, first identified and classified Plaintiff's past jobs, which included retail store manager (light to medium, skilled) and meat cutter/slicer (unskilled and light). She was then given a hypothetical question which incorporated the ALJ's findings about someone able to perform a reduced range of light work. In response, Ms. Hall said that such a person could do the cutter/slicer job as well as other light jobs like housekeeping cleaner, mail clerk, and

marker. She also provided numbers for those jobs as they exist in the national economy. She did the same in response to a hypothetical question which limited the person to sedentary work, identifying representative jobs such as order clerk, document preparer, and touch up screener. Lastly, Ms. Hall said that someone off task more than 10% of the time could not be gainfully employed, nor could someone who missed more than one day of work per month or more than eight days of work per year.

The pertinent medical evidence relates primarily to Plaintiff's psychological impairments, including her anxiety and depressive disorder. According to Nurse Practitioner Ross, the effects of those impairments would cause Plaintiff to be off task sufficiently often and to miss work often enough to be unable to sustain employment.

The diagnosis of depression with anxiety by history appears in a letter from Medicor (to which Plaintiff had been referred due to symptoms of palpation and chest pain) dated August 2, 2013, at a time when Plaintiff was still working. That diagnosis reappears in a note from her treating physician dated March 9, 2015. According to that note, she was taking medication (Lexapro and clonazepam) for those conditions. That note and additional notes from North East Family Practice from 2015 generally do not show that Plaintiff reported any significant psychologically-based symptoms, however; the notes primarily focus on her physical conditions, as do the majority of other treatment notes in the record throughout 2016 and 2017.

The notes dealing with Plaintiff's mental impairments all come from Nurse Practitioner Ross at the Chautauqua Center and begin with an initial evaluation which took place on June 20, 2016. At that time, Plaintiff said that she was struggling with anxiety and panic attacks but had not had an attack for the past month. She also had depressive symptoms which fluctuated in severity. Ms. Ross added Wellbutrin to Plaintiff's medications which, according to the next treatment note made in July, improved her symptoms. At her August appointment, she reported having seasonal depression, but at her next appointment she said her mood was better and her anxiety had stabilized after she moved residences. The November note states that Plaintiff did not make her previous appointment and did not follow up with counseling. At that appointment, Plaintiff said her seasonal depression was not as bad as it had been in the past. When next seen in April, 2017, Plaintiff had discontinued the Wellbutrin on her own and was having more panic attacks. She did not return to see Ms. Ross until September, 2017, at which time she said she was having trouble sleeping but was socializing more frequently. That is the last note from Ms. Ross found in the record.

Nurse Practitioner Ross completed a Mental Impairment Questionnaire on November 22, 2017. She noted that she had been counseling Plaintiff since June, 2016, ostensibly on a monthly basis, but also indicated that Plaintiff had been inconsistent in her attendance and that her condition could improve if she were more engaged in counseling. She had diagnosed Plaintiff with major depression, recurrent; rule out bipolar disorder and PTSD; and generalized anxiety. Her GAF at that time was 58 but had been as high as 60 in the past year. Ms. Ross described various symptoms from which Plaintiff suffered including mood disturbance, difficulty thinking

and concentrating, and recurrent severe panic attacks. She thought Plaintiff was seriously limited in her ability to maintain regular attendance and be punctual and to deal with work stress. In Ms. Ross's opinion, Plaintiff would be off task more than 20% of the time and would miss work about four days per month. (Tr. 635-40).

A psychological evaluation was performed by Dr. Luna, a consultative examiner, on July 15, 2015. At that time, Plaintiff had not been either hospitalized or treated on an outpatient basis for mental health issues. She had lost 80 pounds in the past six months but did not report any depressive symptoms or any thought disorders. Plaintiff said she had experienced anxiety since childhood and panic attacks since 2000. She had a full affect but said that the evaluation was stressful. Plaintiff described a relatively full range of normal activity including socializing with friends. Dr. Luna rated Plaintiff's ability to concentrate as mildly impaired and said the same about her recent and remote memory skills. Dr. Luna believed that Plaintiff could perform all aspects of simple and complex tasks but was mildly limited in her ability to learn new tasks, relate to others, and deal with stress. She also had a moderate limitation in her ability to maintain attention and concentration due to distractibility. (Tr. 379-84). A state agency reviewer, Dr. Kleinerman, concluded that Plaintiff had no severe mental impairments.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same

standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  The ALJ's decision

Because Plaintiff's claims of error relate to how the ALJ dealt with the opinion evidence from Dr. Luna and Nurse Practitioner Ross, the Court will first set forth in some detail the relevant portion of the ALJ's decision.

After summarizing the results of Dr. Luna's evaluation and the mental health treatment notes made between June of 2016 and September of 2017, and commenting that most of the mental status exams were described as unremarkable, the ALJ accurately recapped the questionnaire which Ms. Ross completed. (Tr. 27-29). She then noted that the GAF scores reported were indicative of moderate symptoms and, in a finding not challenged by Plaintiff, concluded that Plaintiff's description of her symptoms were inconsistent with the evidence concerning her activities of daily living. Next, she discounted Dr. Kleinerman's statement that Plaintiff's mental impairments were not severe, finding that it was contradicted by the opinion expressed by Dr. Luna. Dr. Luna's opinion was given significant weight as being "based on an examination by a doctor with program knowledge" and as "consistent with the record...." (Tr. 29).

The ALJ then turned to Nurse Practitioner Ross's opinions as expressed on the questionnaire. She gave little weight to the GAF scores, noting that they were mere snapshots of function and included extraneous factors. Turning to the key portions of the evaluation, the ALJ said that the examination notes did not support those limitations and that they were inconsistent with other responses given, including the opinion that Plaintiff could deal with the stress of even semi-skilled or skilled work. The ALJ also pointed out that "a nurse practitioner is not considered an acceptable medical source under SSR 06-03p." (Tr. 30). Finally, she noted that her residual functional capacity finding took into account the fact that Plaintiff had missed mental health appointments and was inconsistent in taking her medication, and also that she made inconsistent statements to Ms. Ross about her energy level and her pain. *Id*.

#### B.  Plaintiff's Claim of Error

In her motion for judgment, Plaintiff asserts this claim:

The ALJ's RFC assessment was not based on substantial evidence because she failed to explain how she incorporated various limitations of medical opinion evidence and she made legal errors in weighing the opinion evidence.

Plaintiff's memorandum, Doc. 11, at 1.

As to the first part of this claim - that the ALJ did not provide an adequate explanation about how she reached her residual functional capacity finding in light of the opinion evidence - Plaintiff argues that although the ALJ purported to give significant weight to the opinion evidence provided by Dr. Luna, the consultative examiner, she did not explain how the limitations expressed by Dr. Luna were addressed by the finding that Plaintiff was capable only of performing simple routine tasks, making simple work-related decisions, and dealing with only minimal changes in work routines.  In the second part of her argument, Plaintiff acknowledges that the ALJ gave only little weight to Nurse Practitioner Ross's opinion, but she faults the ALJ for "not indicat[ing] the weight she gave to all aspects of the opinion." *Id*. at 16.  She asserts that the ALJ failed specifically to mention various portions of the opinion in her decision, such as limitations on Plaintiff's ability to maintain regular attendance and be punctual, to cope with changes in the work environment, to maintain concentration, persistence, and pace, and to comment on the statement that Plaintiff would miss four or more days of work per month.

The Commissioner, in response to the first argument, points out that the mild and moderate limitations expressed in Dr. Luna's report are entirely consistent with the ability to perform unskilled work.  The case law supports this position.   For example, in *Herb v. Comm'r of Soc. Sec.,* 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019), this Court said:

> The Court is cognizant that, even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations. For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations

*See also Clemons v. Comm'r of Soc. Sec.*, 2017 WL 766901, at *6 (N.D.N.Y. Feb. 27, 2017) ("although the ALJ did not explicitly mention plaintiff's ability to manage stress in his RFC determination, his ultimate conclusion that plaintiff could perform simple tasks adequately addressed any limitations that plaintiff had in this functional area").  *Clemons* also notes that the ALJ is not required, in an RFC finding, to mirror exactly the limitations expressed in a medical opinion to which the ALJ has given significant weight, but may take other evidence of record into account.  Applying these principles here, the Court concludes, on this record, that the ALJ properly translated the mild and moderate limitations expressed in Dr. Luna's opinion into restrictions on Plaintiff's ability to perform more than simple, routine tasks and to adapt to changes in the workplace.  Consequently, the ALJ did not commit any error in the way she explained her RFC finding.

Turning to the second part of Plaintiff's argument, the Commissioner responds that an ALJ is not required to mention explicitly each aspect of a medical opinion if the record is sufficiently clear to allow the Court to follow the ALJ's reasoning.  The Commissioner's memorandum cites to *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443 (2d Cir. 2012), a case in

which the Court of Appeals rejected the plaintiff's claim that an ALJ's decision was flawed because the ALJ did not specifically discuss an objection made to vocational expert testimony, stating that "[a]n ALJ does not have to state on the record every reason justifying a decision." As this Court has observed,

> it is "not require[d] that [the] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review.

*Sewar v. Berryhill*, 2018 WL 3569934, at *2 (W.D.N.Y. July 25, 2018).

Here, the ALJ explained that she gave little overall weight to the opinion of Nurse Practitioner Ross, and she explained why. Plaintiff does not contest the bases of her reasoning, but only her failure to mention explicitly some of the particular aspects of the opinion. As the case law illustrates, there is no legal requirement that an ALJ discuss opinions - particularly those which are not entitled to controlling weight under the "treating physician" rule found in 20 C.F.R. §404.1527 - in that level of detail. The ALJ concluded, based on Dr. Luna's opinion and evidence concerning Plaintiff's activities of daily living, as well as Ms. Ross's treatment notes, that Plaintiff was able to work at unskilled jobs in an environment with little need to adapt to changes.

It cannot be doubted that the ALJ implicitly, if not explicitly, rejected those limitations contained within Ms. Ross's opinion that are inconsistent with the ability to maintain competitive employment, and the ALJ provided a sufficient explanation for assigning only little weight to that opinion as a whole. The Court has no difficulty in this case discerning the basis for the ALJ's conclusion or following the ALJ's reasoning process. Under these circumstances, there is no basis for directing a remand for the purposes of having the ALJ provide a more detailed explanation of her reasoning process. Consequently, the Court finds Plaintiff's single claim of error to be without merit and will direct the entry of judgment in favor of the Commissioner.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion (Doc. 11), **GRANTS** Defendant's motion (Doc. 12), and directs the Clerk to enter judgment in favor of the Defendant Commissioner.

/s/ Terence P. Kemp
**United States Magistrate Judge**